UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVARIOL MARQUAVIS TAYLOR,

               Plaintiff,

                                   Case No. 1:21-cv-276

v.

                                   Hon. Hala Y. Jarbou

SABRINA DAVIS, et al.,

               Defendants.

_____/

**<u>OPINION</u>**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Davis, Jex, Morris, Powell, Cassel, Maranka, Traylor, Doesburg, Wells, and McQuiston. The Court will also dismiss, for failure to state a claim, all claims against remaining Defendants Schaefer and Hawn, with the exception of Plaintiff's Eighth Amendment claim alleging that they intentionally slammed Plaintiff's hand in his cell door.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following ICF officials: Acting Assistant Deputy Warden (ADW) Sabrina Davis; ADW C. Traylor; Prisoner Counselors Matthew Jex, Heather Powell, and Unknown McQuiston; Hearings Officer/Administrative Law Judge Sara Morris; Inspector Dennis Cassel; Unit Chief David Maranka; and Correctional Officers Unknown Schafer, H. Doesburg, Unknown Hawn, and Unknown Wells.

Plaintiff's complaint consists of non-chronological and sweeping allegations about harassment and retaliation he experienced between July 2018 and February 2021.  Plaintiff generally alleges that the conduct has been going on for years.  Due to the generalizations and the lack of chronology, the complaint is somewhat difficult to decipher.

Construing the allegations indulgently, Plaintiff alleges that Defendant Schafer packed up his property and never returned it on July 10, 2018,[1] May 5, 2019, and July 2, 2019. Before that, Defendant Schafer and others planned and carried out a cell extraction.  Plaintiff also alleges that Defendant Schafer and others abuse and harass him by calling him names, such as "'Cho-mo,' 'Fag,' 'Faggot,' 'Fag-bitch,' 'Ho-mo,' and 'Punk-ass bitch.'"  (Compl, ECF No. 1, PageID.4.)   During the course of the complaint, Plaintiff deems this name-calling sexual harassment and sexual abuse of a mentally ill person.  Plaintiff also alleges that Defendant Schafer

---

[1] The Court notes that, according to Plaintiff's Misconduct Summary Report (ECF No. 1-2, PageID.14–15; ECF No. 1-3, PageID.78–79, 136–137), Plaintiff appears to have been housed at the Carson City Correctional Facility (DRF) until at least July 13, 2018, because a hearing on a Class-I misconduct charge for assault and battery on a staff member was held at DRF on that date.  (*Id.*)  Plaintiff does not allege that Defendant Schafer served as a staff member at DRF as well as ICF.

at some point slammed Plaintiff's hand in the food slot.  Defendant Schafer also allegedly failed to allow Plaintiff to shower on one or more occasions.  Plaintiff contends that Schafer's actions violated the Eighth Amendment and were taken in retaliation for Plaintiff's complaints under the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq.

Plaintiff alleges that he filed PREA grievances on November 6, 2019, and November 26, 2019.  He also alleges that he attempted to file a grievance on February 13, 2021, by handing it to the nurse, who apparently did not turn it in.  According to Plaintiff, all grievances were denied or rejected.

At some point, Plaintiff also called the PREA hotline, which triggered an investigation that began on May 23, 2020, and ended on July 1, 2020.[2]  Plaintiff apparently called the PREA hotline again, and another investigation began on September 15, 2020, and ended on January 15, 2021.  Neither investigation resulted in discipline of Defendant Schafer.

On December 3, 2019, correctional officer McNeeley (not a defendant) issued Plaintiff a Class-I misconduct ticket, mentioning Defendant Schafer's name in the ticket.[3] Defendant Hearings Officer Sara Morris found Plaintiff guilty of the misconduct charge, expressly stating that she found no evidence that the ticket was issued in retaliation for the filing of PREA grievances.  (Class-I Misconduct Hr'g Report, ECF No. 1-2, PageID.19; ECF No. 1-3, PageID.92–93, 150–151.)

---

[2] According to the three PREA investigative reports attached to the complaint, Plaintiff made PREA complaints about Defendants Schafer and Doesburg, as well as non-defendant officer Perry on May 23, 2020.  All of the investigations were completed on July 1, 2020, and the reports finding no substantiation were signed on July 17, 2020.  (PREA Investigative Findings, ECF No. 1-2, PageID.46–48; ECF No. 1-3, PageID.109–112, 166–168.)  Another PREA investigation was begun on September 15, 2020, concluded on January 15, 2021, and a report was issued on February 9, 2021, finding the allegations to be unsubstantiated.  (PREA Investigative Findings, ECF No. 1-3, PageID.169.)

[3] The misconduct ticket was for threatening behavior and stated that Plaintiff told McNeeley, "I'll give this tray back after I fuck up you and Schafer."  (Dec. 3, 2019, Misconduct Report, ECF No. 1-2, PageID.20; ECF No. 1-3, PageID.84, 142.)

3

Plaintiff alleges that Defendant Doesburg set him up, got him extracted from his cell, lied about him, and wrote a false Class-I misconduct charge against him on March 28, 2020.[4] Plaintiff also alleges that, on an unknown occasion, Defendant Doesburg requested that Plaintiff engage in an unspecified sexual act with him.  Plaintiff told Defendant Hearings Officer Morris that Defendant Doesburg's misconduct charge was taken in retaliation for Plaintiff's PREA grievances and designed to interfere with Plaintiff's parole, because of Doesburg's friendship with other officers about whom Plaintiff complained.  Defendant Morris nonetheless found Plaintiff guilty and specifically found that Plaintiff's claim of retaliation was not credible.  (Apr. 7, 2020, Misconduct Hr'g Report, ECF No. 1-2, PageID.31.)

Plaintiff complains that Defendant Morris improperly found Plaintiff guilty of the misconduct charges[5] and thereby participated in the sabotaging of Plaintiff's parole.  He also alleges that Morris' decisions themselves constituted retaliation for his having filed PREA charges.

Plaintiff also claims that he spoke to Defendant Davis on a number of occasions about staff harassment and his belief that staff were retaliating against him for calling the PREA hotline.  Defendant Davis told Plaintiff twice, on March 13, and March 27, 2020, that he should speak with the PREA coordinator.  Plaintiff also alleges that he hand-delivered a list of staff abuses and harassment to Davis on February 11, 2021.  When he did not receive a PREA grievance identifier, Plaintiff asked Defendant Davis about it.  Davis responded that she had turned the

---

[4] The misconduct ticket was for threatening behavior and charged that, on March 28, 2020, in response to Defendant Doesburg's question whether Plaintiff wanted J-pay or store, Plaintiff responded, "I'd like J-pay, store, and to fuck start your face."  (Misconduct Report, ECF No. 1-2, PageID.32, 94, 152.)

[5] In addition to the two misconduct tickets mentioned in Plaintiff's complaint, Plaintiff has attached a Class-I misconduct report for threatening behavior filed by Officer Kinney on March 11, 2020, in which Plaintiff was alleged to have told Kinney, "[F]uck you white devil.  Sir, I am going to stab you in the eyeball."  (Mar. 11, 2020, Misconduct Report, ECF No. 1-2, PageID.33, 95, 153.)  Defendant Morris also found Plaintiff guilty of this third misconduct charge.  (Mar. 24, 2020, Misconduct Hr'g Report, ECF No. 1-2, PageID.30–31, 92–93, 150–151.)  Morris expressly found not credible Plaintiff's claim that Kinney wrote the report in retaliation for Plaintiff's PREA complaint against Defendant Schafer.

grievance in.  Plaintiff complains that he has submitted grievances to Defendants Davis, Traylor, and Maranka "over all these years [and] I didn't get not one back."  (Compl., ECF No. 1, PageID.5.)  Plaintiff also complained to Davis that he was "dealing with staff-on-prisoner Sexual Abuse & Harassment about my CSC case from Schafer, Wells, Hawn & Doesburg." (*Id.*)  Plaintiff alleges that Defendant Davis was negligent in not addressing the retaliation, abuse, and harassment.  He also contends that Defendants Traylor and Maranka did nothing to cure the retaliation after he informed them about it at his monthly SCC (Security Classification Committee[6]) meetings.

Plaintiff complains that Defendants Hawn and Wells "verbally abused [him] and harassed [him] when they work about [his] CSC case to retaliate for PREA claims on them which haven't been investigated yet." (*Id.*, PageID.6.)  On November 7, and 8, 2020, Defendant Hawn allegedly called Plaintiff a "Ho-mo" and asked him, "[I]f you [sic] not eating the banan[]as what are you doing with it?" (*Id.*)  Defendant Wells also refused to deliver Plaintiff's store items on November 9, 2020, requiring Plaintiff to ask another staff member for the items.  Plaintiff complains that Hawn and Wells have falsely stated that Plaintiff refused things, such as a shower, yard, food, and cell cleaning, in order to retaliate against him for his PREA grievances.  Plaintiff contends that Defendant Hawn physically abused him by slamming his hand in the food slot, saying, "[Y]ou want to play games?" (*Id.*, PageID.7.)

Plaintiff alleges that Defendants Jex, Powell, and McQuiston refused to issue SPONs (Special Problem Offender Notices) on his abusers, the harassing officers, and refused to place Plaintiff in protective custody.  Plaintiff also complains that these Defendants failed to report

---

[6] MDOC PD 04.05.120 provide that the Security Classification Committee (SCC) is appointed by the warden and "is responsible for ensuring proper prisoner placement at that facility. *Id.*, ¶ C.  Under the policy, the SCC regularly reviews prisoners who are placed in administrative segregation. *Id.*, ¶¶ U, W, KKK.

some of his complaints and threw away some of his grievances.  He alleges that Defendants'
interference with his grievances violated his right to due process and that their failure to issue
SPONs and place him in protective custody violated the Eighth Amendment.

Plaintiff complains that Inspector Cassel was aware of all of Plaintiff's concerns
but failed to take action.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in
the form of a face-to-face parole hearing.

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While
a complaint need not contain detailed factual allegations, a plaintiff's allegations must include
more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice.").  The court must determine whether the complaint contains "enough
facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at
679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it
asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at
678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not
'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.
8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Judicial Immunity

Plaintiff complains that Defendant Morris, by finding him guilty of three Class-I misconduct charges, retaliated against him and participated in the sabotaging of his parole.

Generally, a judge is absolutely immune from a suit for monetary damages.  *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  Absolute judicial immunity may be overcome in only two instances.  First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity.  *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it").  Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.  *Id.* at 12; *Bright v. Gallia Cnty.*, 753 F.3d 639, 649 (6th Cir. 2014) (recognizing the difference between

7

an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter[,]" and noting that only the latter deprives a judge of judicial immunity).

Defendant Morris is a hearings officer, whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255.  Hearings officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* Mich. Comp. Laws § 791.251(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* Mich. Comp. Laws § 791.252(k).  There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts.  *See* Mich. Comp. Laws § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearings officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivations of civil rights).

Plaintiff complains solely about the actions taken by Defendant Morris in her capacity as a hearings officer for matters over which she had jurisdiction.  As a consequence, Defendant Morris is entitled to absolute judicial immunity, and the Court will dismiss the action against her.

## IV. Interference with Grievances

Plaintiff alleges that Defendants Davis, Traylor, Maranka, Jex, Powell, and McQuiston threw away or failed to forward his grievances and/or otherwise interfered with the grievance process, ostensibly in violation of his right to due process.

Plaintiff has no due process right to file a prison grievance or to have it processed in accordance with MDOC procedures. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, no Defendant's conduct deprived him of due process.

## V. Failure to Follow Policy

To the extent that Plaintiff intends to allege that Defendants failed to follow their own policies respecting grievances, PREA grievances, the issuance of SPONs, or placement in protective custody, he fails to state a cognizable federal claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2

9

(6th Cir. 2007).  To demonstrate a violation of procedural due process, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts repeatedly have recognized that a prisoner does not enjoy a federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).  Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

## VI.   Eighth Amendment

Plaintiff raises a number of Eighth Amendment claims.  He alleges that Defendants Schafer called Plaintiff a series of names, such as "Faggot," "ho-mo," and Punk-ass bitch," which Plaintiff contends amounts to sexual harassment and sexual abuse.  Plaintiff asserts that Defendants Hawn and Wells also called him names and that Defendant Hawn asked Plaintiff what he was doing with his bananas if he wasn't eating them.  Plaintiff also alleges that Defendants Hawn and Wells have refused him such things as delivering his store items on one occasion and denying him a shower, yard privileges, food, and cell cleaning on an unspecified number of occasions.  In addition, Plaintiff alleges that both Defendant Schafer and Defendant Hawn slammed Plaintiff's hand in his cell door on one unidentified occasion.  Further, Plaintiff contends

that Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka failed to take action in response to Plaintiff's complaints about harassment and failed to place Plaintiff in protective custody or issue a SPON against the harassing Defendants.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993)

11

(applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

### A.     Verbal harassment

Plaintiff complains that Defendants Schafer, Hawn, and Wells verbally harassed him with sexualized name-calling.  Plaintiff also makes a nonspecific allegation that Defendant Doesburg asked Plaintiff to engage in a sexual act with him.

Even were the Court to accept Plaintiff's assertion that the name-calling he endured was sexualized and sexually harassing, his allegations would fail to state a claim.  "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards."  *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards).  However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional

dimensions.  *See, e.g., Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse].").  Other courts have agreed.  *See, e.g., Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, *coercive* verbal harassment may rise to sexual abuse that violates the Eighth Amendment.  *Rafferty*, 915 F.3d at 1095.  The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched.  The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse.  *Id.* at 1096.

Here, Plaintiff does not allege that Defendants Schafer, Hawn, or Wells engaged in any coercive sexual harassment.  Instead, Plaintiff simply complains that these Defendants should not have called him names.  Absent the necessary coercion, the name-calling by Defendants

Schafer, Hawn, or Wells, while unprofessional, does not rise to the level of an Eighth Amendment violation.

Plaintiff's allegation that Defendant Doesburg asked Plaintiff to perform a sexual act could, if sufficiently specific, rise to the level of coercion.  However, like much of the complaint, the allegation is wholly conclusory.  Plaintiff does not state what Doesburg actually said; he merely characterizes the statement as a sexual request.  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Plaintiff's conclusory allegation about Defendant Doesburg's statement fails to meet the plausibility standard of Rule 8 of the Federal Rules of Civil Procedure.  *Iqbal*, 556 U.S. at 679.

### B.    Failure to place in protective custody or issue a SPON

Plaintiff contends that Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka failed to take action in response to Plaintiff's complaints about verbal harassment and failed to place Plaintiff in protective custody or issue a SPON against the harassing Defendants.

Plaintiff's allegations against Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka largely rest on their supervisory responsibility for the actions of their subordinates and their failures to respond to Plaintiff's grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*,

14

532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka engaged in any active unconstitutional behavior.

Even assuming that Plaintiff had shown that these Defendants engaged in active conduct that could subject them to liability, Plaintiff's claim would fail.  As discussed, Plaintiff fails to allege that he was experiencing harassment that violated the Eighth Amendment.  Consequently, Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka cannot be deemed to have violated the Eighth Amendment by failing to take action to protect Plaintiff.

## C.   Temporary inconveniences

Plaintiff alleges that Defendants Hawn and Wells have deprived him of varying privileges on an unspecified number of occasions.  He contends that Defendant Wells refused to deliver his store items on one occasion and that Defendants Hawn and Wells at unspecified times falsely reported that Plaintiff had refused a shower, yard privileges, food, and cell cleaning— thereby denying him access to those necessities.

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary

15

standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)).

Plaintiff's allegation that Defendant Wells refused to deliver Plaintiff's commissary items fails both to allege denial of a basic human need and to allege more than a temporary inconvenience, especially given that another official delivered the items when asked.  For both reasons, Plaintiff's claim against Defendant Wells based on the denial of commissary items fails to state an Eighth Amendment claim.

Moreover, Plaintiff's conclusory allegation that Defendants Hawn and Wells denied him a shower, yard privileges, food, and cell cleaning falls well short of stating facts that would support an Eighth Amendment violation.  With respect to the allegation that Plaintiff was denied one or more showers, Plaintiff's allegation falls well short of stating a claim.  The constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene.  *See Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not

16

unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (deprivation of single shower does not implicate Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

Similarly, Plaintiff's allegation about being denied yard privileges is woefully insufficient to state a claim.  It unquestionably is well established that "'total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'"  *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)); *see also Argue v. Hofmeyer*, 80 F. App'x 427 (6th Cir. 2003).  But it is equally well established that temporary deprivation of yard privileges is insufficient.  *See, e.g., May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (denial of out-of-cell exercise for 21 days did not rise to Eighth amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required), *cited with approval in Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001); *Harris v. Fleming*, 839

F.2d 1232, 1236 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).  Plaintiff does not allege that the deprivation of yard privileges lasted for a lengthy period, that his cell was too small to permit any exercise, or that he suffered any ill effects from the occasional limitations on his yard privileges.  His allegation that he was denied yard privileges therefore fails to state an Eighth Amendment claim.

In addition, the simple denial of one opportunity to clean his cell does not implicate the Eighth Amendment.  *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "'the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.'") (emphasis in original; further internal quotations omitted) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (holding that both the length of exposure and the severity of the deprivation are important factors in evaluating the seriousness of the deprivation)).

Plaintiff does not even allege that his cell was dirty, much less that it remained dirty for any length of time, *id.*, or that it was so filthy as to offend the Eighth Amendment.  *See Taylor v. Riojas*, 141 S. Ct. 52 (2020) (finding an Eighth Amendment claim based on allegations of extreme filth—where feces covered the walls and floors of the cell and were packed into the water faucet).  As a consequence, Plaintiff's allegation that Defendants Hawn and Wells deprived him of an opportunity to clean his cell on unknown occasions fails to state an Eighth Amendment claim.

Finally, Plaintiff's conclusory allegation that Defendants Hawn and Wells deprived him of food fails to state an Eighth Amendment claim.  The deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v.*

*Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).  Plaintiff's conclusory allegation, at best, suggests that he may have missed an occasional meal.  Such an allegation is insufficient to state an Eighth Amendment claim.

For these reasons, Plaintiff's conclusory allegation against Defendants Hawn and Wells alleges nothing more than that they caused him to experience temporary inconveniences.  His Eighth Amendment claims against them therefore will be dismissed.

### D.     Slamming hand in cell door

Plaintiff complains that Defendants Schafer and Hawn slammed Plaintiff's hand in the cell door, in violation of the Eighth Amendment.  Although Plaintiff does not specifically allege that Defendants' actions were intentional, he alleges that they were retaliatory, which necessarily includes a lesser claim that they were intentional.

19

Upon initial review, the Court concludes that Plaintiff's allegation is sufficient to state an Eighth Amendment claim against Defendants Schafer and Hawn based on their actions to close the cell door on Plaintiff's hand.

## VII.    Retaliation

Plaintiff alleges that Defendants Schafer, Wells, and Hawn retaliated against him for filing PREA grievances by verbally harassing him, closing the door on his hand, and depriving him of showers, yard privileges, food, and cell cleaning on unspecified occasions.  Plaintiff also asserts that Defendant Doesburg retaliated against him for filing the PREA grievances by writing a false misconduct charge against Plaintiff.  In addition, Plaintiff alleges that Defendants Jex, Powell, McQuiston, Cassel, Davis, Traylor, and Maranka retaliated against him by failing to take action in response to Plaintiff's complaints and grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's allegations against all Defendants are wholly conclusory.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."

20

*Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987));  *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In some circumstances, temporal proximity between the protected conduct and the allegedly adverse action "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  That is particularly true where, as here, Plaintiff alleges that he has filed dozens of grievances, including PREA grievances. Moreover, in his complaint, Plaintiff provides no date upon which he filed grievances, nor has he identified the party complained of in each of those grievances.[7]  He quite simply fails to allege

---

[7] Plaintiff attaches to the complaint a copy of his prisoner grievance summary report (ECF No. 1-2, PageID.28; ECF No. 1-3, PageID.91, 149), which shows that he submitted 24 grievances between September 21, 2018, and February 23, 2021, but the report utterly fails to identify any defendant named in the grievances.  All but four of those grievances were submitted between September 21, 2018, and November 21, 2019, and the list of grievances included a five-month gap between April 23, and September 26, 2019, and a seven-week gap between January 8, and February 28, 2019.  The time between grievances otherwise ranged from zero days to three weeks.  (*Id.*)  Plaintiff also has attached copies of certain grievances, but most are substantially illegible.  (ECF No. 1-2, PageID.36–40, 43–44, 50–51, 58–65; ECF No. 1-3, PageID.99–103, 106–107, 113, 118–123, 149, 156–160, 163–164, 175–180.)  To the extent that they are legible, all grievances rested on general allegations against "staff," rather than alleging conduct by any Defendant.

facts suggesting that any of his grievances were temporally proximate to any Defendants' actions, much less that they were sufficiently proximate to suggest a retaliatory motive.

Instead, Plaintiff merely alleges the ultimate fact of retaliation.  He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct.  He simply concludes that because he filed some grievances within days, weeks, months, or years before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.  *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).  This is especially true where, as here, the plaintiff is a prolific filer of grievances.  *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").  Plaintiff's conclusory allegations are insufficient to state a retaliation claim.

Moreover, Plaintiff's allegation that Defendant Doesburg filed a retaliatory Class-I misconduct charge against Plaintiff fails for an additional reason:  the hearings officer found Plaintiff guilty of the misconduct charge and expressly found that Plaintiff's allegation that Defendant Doesburg issued the misconduct in retaliation for Plaintiff's PREA grievance against Defendant Schafer was factually unsupported and not credible.

A prisoner's claim that he was falsely accused of a misconduct is barred where there has been a finding of guilt in a misconduct hearing.  *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action).  However, as the Sixth Circuit

subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual

finding is entitled to preclusive effect.  Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916-17.  It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404–05.

In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit further clarified

the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id.* at 908, 911.  The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014).  The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404.  "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id*. at 404–05 (internal citations and quotation marks omitted).  The Court declined to decide the preclusion question[] and remanded the case to the district court to consider the argument for the first time.  *Id*. at 405.  The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer."  *Id*.  The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]."  *Id*. at 405.

*Maben*, 887 F. 3d at 259.

In the instant case, as previously discussed, Plaintiff's misconduct hearing was conducted before an administrative law judge acting in her judicial capacity.  Plaintiff expressly defended against the misconduct charge by arguing that Defendant Doesburg issued the misconduct ticket in retaliation for Plaintiff's prior PREA complaint against other officers.  The hearings officer found no evidence to support Plaintiff's claim of retaliation and, in the context of the case, no reason to believe the claim.  Plaintiff had ample opportunity to litigate the issue and exercised that opportunity, basing his defense to the misconduct principally on the allegedly retaliatory motive.  As a consequence, the elements of the *Peterson/Roberson/ Maben* test are met.  The decision of Defendant Morris therefore precludes Plaintiff's retaliation claim against Defendant Doesburg.

Accordingly, Plaintiff's conclusory allegations are insufficient to state a retaliation claim against any Defendant, and his retaliation claim against Defendant Doesburg is barred by the additional principle of preclusion.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Davis, Jex, Morris, Powell, Cassel, Maranka, Traylor, Doesburg, Wells, and McQuiston will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2)

and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, all claims against remaining Defendants Schaefer and Hawn, with the exception of Plaintiff's Eighth Amendment claim alleging that they intentionally slammed Plaintiff's hand in his cell door.

An order consistent with this opinion will be entered.


Dated:  __September 13, 2021__            __/s/ Hala Y. Jarbou_____
                                          HALA Y. JARBOU
                                          UNITED STATES DISTRICT JUDGE